EDWARD J. DRISCOLL, JR. v.
JOSEPH L. DONOVAN.

183 N. W. (2d) 571.

January 29, 1971—No. 42777.

*Cochrane & Bresnahan* and *John A. Cochrane,* for petitioner.

*Douglas M. Head,* Attorney General, *Jerome D. Truhn,* Solicitor General, *Byron Stearns,* Assistant Attorney General, and *Mark T. Signorelli,* Special Assistant Attorney General, for respondent.

OTIS, JUSTICE.

This matter came before the court on September 21, 1970, on a petition invoking the court's original jurisdiction pursuant to Minn. St. 203.38.[1] Petitioner, Edward J. Driscoll, Jr., sought an order requiring the secretary of state to place his name on the ballot as a candidate for public service commissioner at the November 3, 1970, general election. On October 1, 1970, we denied the petition without filing a formal opinion.

By L. 1967, c. 864, codified as Minn. St. c. 216A, the legislature abolished the Railroad and Warehouse Commission and created the Public Service Commission. Pertinent portions of § 216A.03 are as follows:

"Subdivision 1. As of May 26, 1967 the public service commission shall consist of the three members elected to the Minnesota railroad and warehouse commission; and each shall serve out the term for which he was elected as railroad and warehouse commissioner and shall, in accordance with applicable statutes, be eligible for re-election for one six-year term. Thereafter the terms of all subsequent members of the commission shall be six years and until their successors have been appointed and qualified. Each commissioner shall be appointed by the governor by and with the advice and consent of the senate. Not more than two commissioners shall belong to the same political party. The governor in his selection of commissioners shall give considera-

---

[1] Relevant portions of Minn. St. 203.38, subd. 1, are as follows: "When it shall appear by affidavit to any judge of the supreme court in the case of a state election, or of the district court of the proper county in the case of a county election:

"(a) That an error or omission in the placing or printing of the name or description of any candidate on official primary or general election ballots has occurred or is about to occur; * * *

     * * * * *

"then the judge immediately shall order the officer, person, or board charged with the error, wrong, neglect, or failure to correct the same or perform the duty forthwith or show why he should not do so. Failure to obey the order is contempt of court."

tion to persons learned in the law or persons who have engaged in the profession of engineering, public accounting or property and utility valuation as well as being representative of the general public.

"Subd. 2. Any vacancy on the commission shall be filled by the governor, by and with the advice and consent of the senate, for the unexpired portion of the term in which the vacancy occurs."

On the effective date of the statute, one of the incumbent railroad and warehouse commissioners was Mr. Paul Rasmussen. He was reelected at the November 1968 general election for a term expiring in January 1975. On September 8, 1970, he died. By these proceedings, petitioner claimed the right to seek election for the unexpired balance of Commissioner Rasmussen's 6-year term.

On September 17, 1970, in response to a request by the secretary of state, the attorney general rendered an opinion that an election to fill the vacancy created by Commissioner Rasmussen's death was not authorized. Opinion Attorney General, No. 359a-20, Sept. 17, 1970. Accordingly, when petitioner tendered a filing fee, the secretary of state refused to accept it and petitioner brought these proceedings to compel him to do so.

Petitioner argues that Minn. Const. art. 5, § 4, limits the governor's power to fill vacancies to a term ending in January following the next general election after the vacancy occurs. The secretary of state, on the other hand, takes the position that the section cited refers only to elective offices and that the legislature intended vacancies such as that created by Commissioner Rasmussen's death to be filled by appointment without any further election.

The pertinent provisions of Minn. Const. art. 5, § 4, are as follows:

"* * * He shall have power, by and with the advice and consent of the Senate, to appoint notaries public, and such other offi-

cers as may be provided by law. * * * He shall take care that the laws be faithfully executed, fill any vacancy that may occur in the office of secretary of state, treasurer, auditor, attorney general, and such other state and district offices as may be hereafter created by law, until the end of the term for which the person who had vacated the office was elected, or the first Monday in January following the next general election whichever is sooner, and until their successors are chosen and qualified."

As we construe the constitution, it provides for the filling of vacancies to appointive office, by and with the advice and consent of the senate, for whatever term the legislature fixes, but restricts the governor's power to fill vacancies in elective offices to a term ending in January after the next general election, if that occurs before the term would otherwise expire. Since the office of railroad and warehouse commissioner was not a constitutional office, the legislature had the right to phase it out in any manner it saw fit.

Petitioner construes the word "thereafter" in the second sentence of § 216A.03, subd. 1, to mean that vacancies shall be filled by appointment only after the expiration of the 6-year term to which incumbents might be elected following the effective date of the Public Service Act. We think the legislative intention is otherwise. The act refers to *"the* three members elected to the Minnesota railroad and warehouse commission" and specifies that *"each* shall serve out the term for which *he* was elected as railroad and warehouse commissioner." (Italics supplied.) It seems clear that the legislature intended to give preference to incumbents, either to minimize resistance to the changeover or to guarantee some continuity of administrative practice by the successor department.

The language of § 216A.03, subd. 2, dealing with vacancies, is unambiguous:

"Any vacancy on the commission shall be filled by the governor, by and with the advice and consent of the senate, for the unexpired portion of the term in which the vacancy occurs."

We find no reason for reading into the statute a legislative intent to apply subd. 2 only after a 6-year term has expired. It seems obvious that the purpose of the statute was otherwise.

In essence, petitioner attacks the attorney general's construction of § 216A.03 as one which allows an individual who happens to be the incumbent to determine the period during which the office shall be elective. Petitioner argues that this decision should not be left to the whim of a particular incumbent or the fortuity of the circumstances. While it is true that under the statute a particular incumbent does have the power to continue or terminate the elective nature of his office, we find no constitutional impediment to this result. Under our decisions, the legislature had the right to determine the manner in which the transition from the Railroad and Warehouse Commission to the Public Service Commission would be accomplished. Starkweather v. Blair, 245 Minn. 371, 390, 71 N. W. (2d) 869, 881. We hold that the measures taken were proper and within the constitutional prerogatives of the legislature.

The petition is therefore denied.

MR. JUSTICE PETERSON took no part in the consideration or decision of this case.